## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **JOSE COTO** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **SEABORNE VIRGIN ISLANDS, INC.** | : | **NO. 14-14** |

## MEMORANDUM OPINION

**Savage, J.**                                                        **June 26, 2017**

### Background

In this employment discrimination action, plaintiff Jose Coto claims that Seaborne Virgin Islands, Inc., a commercial passenger airline, did not hire him as a pilot because he was too old, black, Hispanic, and a native Virgin Islander. He asserts that Seaborne violated Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and the Virgin Islands Civil Rights Act.

Moving for summary judgment, Seaborne argues that Coto cannot make out a *prima facie* case of employment discrimination because he was not as qualified as other candidates for the position of Twin Otter first officer pilot and that he cannot show that its legitimate, non-discriminatory reasons are pretext. In response, Coto contends that he met the minimum qualifications and was more qualified than the six candidates Seaborne hired.

There are a multitude of disputed material facts bearing on Coto's qualifications and Seaborne's reasons for not hiring him. Thus, we shall deny Seaborne's motion for summary judgment.

### Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159–60 (3d Cir. 2003).

The initial burden of demonstrating there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

## Analysis

Employment discrimination cases brought under Title VII of the Civil Rights Act of 1964 and under the Age Discrimination in Employment Act are analyzed using the *McDonnell Douglas* burden-shifting scheme. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).[1] First, the plaintiff must present enough evidence to make out a

___

[1] The parties do not dispute that the same legal and evidentiary standards apply to Coto's Virgin Islands Civil Rights Act claims. *Mercer v. Gov't of the V.I. Dep't of Educ.*, Civ. No. 2014-50, 2016 WL 5844467, at *8 (D.V.I. Sept. 30, 2016); *Galloway v. Islands Mech. Contractor, Inc.*, Civ. No. 2008-71, 2012 WL 3984891, at *15 (D.V.I. Sept. 11, 2012); *Desir v. Hovensa, LLC*, Civ. No. 2007-97, 2012 WL 762122, at *6 (D.V.I. Mar. 7, 2012).

*prima facie* case. If he does, at the second step, the defendant must produce evidence of a legitimate non-discriminatory reason for the adverse employment action. At the third step, the plaintiff must produce evidence that the defendant's proffered reason for taking the adverse action was merely a pretext for the real discriminatory reason behind the adverse action. *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 432–33 (3d Cir. 1997).

If the plaintiff fails to establish a *prima facie* case, the defendant is entitled to judgment as a matter of law. The determination of whether a *prima facie* case has been established is, under most circumstances, a question of law for the court. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 347 n.1 (3d Cir. 1999).

To make out a *prima facie* case of discrimination in a failure to hire case, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the job; (3) he was not hired; and (4) the circumstances give rise to an inference of

Coto does not specify whether he brings race, color, national origin, and/or age discrimination claims under the Virgin Islands Civil Rights Act. Nor does he specify under which provisions of the Virgin Islands Civil Rights Act he brings his claims, other than broadly citing V.I. Code tit. 10 §§ 1–10, 64 and V.I. Code tit. 24 § 451. Virgin Islands Code Title 10, Chapter I provides a private cause of action for employment discrimination "on account of race, creed, color, or national origin." V.I. Code. tit. 10 §§ 3, 7. It does not prohibit discrimination based on age.

By contrast, Section 64 prohibits employment discrimination based on "age, race, creed, color, national origin, place of birth, sex, disability and/or political affiliation," but does not provide a private cause of action, instead leaving enforcement to the Virgin Islands Civil Rights Commission. *Id.* § 64; *see also Speaks v. Gov't of the V.I.*, Civ. No. 2006-168, 2009 WL 167330, at *3–4 (D.V.I. Jan. 14, 2009) (Bartle, C.J.) (holding that the Virgin Islands Legislature did not intend to create a private right of action under Title 10, Chapter 5); *Miller v. V.I. Hous. Auth.*, Civ. No. 1998-89, 2005 WL 1353395, at *5 n.4 (D.V.I. June 3, 2005) (Finch, C.J.) (holding Title 10, Chapter 5 did not create a private cause of action).

Finally, the Virgin Islands Legislature amended V.I. Code tit. 24 § 451 in 2011 to "add[] a new subsection (a)" to provide a private cause of action. *Mercer*, 2016 WL 5844467, at *5. However, when codified, the 2011 amendments replaced existing subsection (a), which defined discrimination, rather than add the private cause of action to existing subsection (a). *Id.* at *5–6. The *Mercer* court held that the amendments providing a private cause of action were in addition to the previous subsection, which prohibited employment discrimination based on "sex, age, religion, color or ancestry," and read them together. V.I. Code tit. 24 § 451(a)(1) (2010); *see also Mercer*, 2016 WL 5844467, at *8. Thus, under the *Mercer* court's reading, Coto has a private cause of action for employment discrimination based on race, color, national origin, and age under V.I. Code tit. 24 § 451.

3

discrimination, such as the employer kept the position open and continued to seek applicants from persons having the same qualifications as the plaintiff, or persons hired for the position were less qualified than the plaintiff. *Sarullo*, 352 F.3d at 797–98; *see also Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009); *Pivirotto*, 191 F.3d at 352.

Seaborne argues that Coto has not made out a *prima facie* case of discrimination; and, even if he did, it had legitimate, non-discriminatory reasons not to hire him. There is no question that Coto is a member of at least one protected class and he was not hired. The dispute is over his qualifications and those of the persons who were hired. Seaborne contends that the decision not to hire Coto had nothing to do with his membership in a protected class. On the contrary, Seaborne claims that Coto was not as qualified as the candidates who were hired because he had not flown enough hours in recent months. Coto counters that not only was he qualified for the position, he was more qualified than some pilots ultimately hired by Seaborne. He points out that he had more flying experience over his career and had no past employment problems. Some of the hired pilots' employment history included termination for violating company policies, a suspension of the pilot's license, an FAA notice of disapproval, and failed checkrides.[2]

Seaborne asserts that Coto was not qualified for the position of Twin Otter first officer pilot. Yet, it does not dispute that he met the minimum qualifications for the position.[3] Asked in her deposition whether Coto was qualified, Kelly Simon, then

---

[2] Doc. No. 75-1 at ECF 39, 69, 74. A checkride is an evaluation required for receiving a pilot's license or other endorsement.

[3] Seaborne V.I., Inc.'s Resp. to Pl.'s Counterstatement of Material Facts (Doc. No. 81) ¶ 1.

4

recruitment manager for Seaborne, testified, "He hadn't flown a lot in the recent months. He wasn't very current. . . . So the answer would be no, there were others that were more qualified."[4]

The Seaborne job posting for a Twin Otter first officer pilot announced that an applicant needed "1500 hours fixed wing total time with at least 100 hours of that being multi-engine."[5] There was no reference to recency or any particular time frame. Coto asserts that, over his career, he has flown 14,000 hours, including 12,000 hours of multi-engine flight time.[6] Seaborne has not pointed to any job requirement that an applicant's minimum flight time had to have been within a fixed time frame. A jury could conclude that the excuse was fabricated as a reason not to hire Coto, an applicant who qualified under the job posting.

Seaborne relies on inconsistencies in Coto's statements to question his qualifications. Coto's interview sheet for his preliminary telephone interview with Seaborne shows "4 or 5" crossed out and replaced with "20" for hours flown in the previous six months.[7] The interview sheet also shows that Coto responded that he had flown 120 hours over the previous twelve months.[8] Asked in his deposition how many hours he had flown in the twelve months before his interview, Coto responded forty hours.[9] At most, Seaborne creates a credibility issue, precluding summary judgment.

---

[4] Simon Dep. (Doc. No. 61-11) at 65:24–66:18.

[5] Doc. No. 67-4 at 2.

[6] Coto Aff. (Doc. No. 67-1) ¶¶ 15–16.

[7] Doc. No. 61-7.

[8] Id.

[9] Coto Dep. (Doc. No. 61-9) at 84:8–12.

5

Coto has made out a *prima facie* case of discrimination. There is evidence, if believed, that he was more qualified than the younger, white candidates who were hired. A jury could infer discrimination from the circumstances surrounding Seaborne's failure to hire Coto. Hence, we turn to Seaborne's stated reasons for not hiring him.

A defendant can satisfy its "relatively light" burden of showing a non-discriminatory reason for its action, *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013), by "introducing evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Seaborne's burden is one of "production, . . . not of persuasion." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123–24 (9th Cir. 2000). It "need not prove that the tendered reason *actually* motivated" its decision. *Fuentes*, 32 F.3d at 763. It need only show that its decision could have been motivated by the proffered legitimate, non-discriminatory reason. *Id.*; *Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999). Seaborne contends that it did not hire Coto because those hired were more qualified. If believed, Seaborne's reason is a legitimate, non-discriminatory one. Coto argues that Seaborne's articulated reason is pretext and not the real reason he was not hired.

Making bald, conclusory statements that the articulated reason is not credible is insufficient. *See Olympic Jr., Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972); *see also Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989). Rather, the plaintiff must produce evidence that will "allow a factfinder reasonably to infer that [the employer's] proffered non-discriminatory reason[ ] was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764

6

(internal quotation marks omitted); *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005); *Stanziale v. Jargowsky*, 200 F.3d 101, 106–07 (3d Cir. 2000) (upholding summary judgment where the plaintiff attempted to show pretext by disputing the importance of the difference in educational qualifications between himself and the person hired rather than challenging the disparity itself or proving that the qualification at issue bore no actual relationship to the employment being sought).

As is the case here, "the *prima facie* case and the pretext inquiries often overlap." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008). Based on the record as it is now, a jury could find that Seaborne's explanation for not hiring Coto is not credible. Such a finding may also give rise to an inference of discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."). Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left for the jury. *Anderson*, 477 U.S. at 255.

Because Seaborne has articulated a non-discriminatory reason, the burden shifts back to Coto to either discredit Seaborne's proffered justification or present evidence that he was not hired because of a discriminatory reason. *Fuentes*, 32 F.3d at 764. A plaintiff may discredit the proffered reason by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . and hence infer that the employer did not act for

[the asserted] non-discriminatory reasons." *Id.* at 765 (emphasis removed) (citations and internal quotation marks omitted); *see also DeAngelo v. DentalEZ, Inc.*, 738 F. Supp. 2d 572, 580 (E.D. Pa. 2010). A plaintiff can meet his burden by "point[ing] to evidence with sufficient probative force" from which a fact finder could conclude that the adverse employment action was more likely than not the result of discrimination. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644–45 (3d Cir. 1998); *Fuentes*, 32 F.3d at 764.

In other words, Coto must submit evidence which: "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762.

Coto has offered evidence supporting an inference of discrimination and showing that Seaborne's reasons not to hire him are pretext. In essence, he claims those pilots Seaborne hired were less qualified. He does not contend they were not qualified, only that they were not as qualified as himself. Seaborne's employment files reveal that four pilots were hired for Twin Otter positions after Seaborne rejected Coto.[10]  Of the six pilots ultimately hired, one was Hispanic, one was black, and four were white.[11]  All six were under forty.[12]  Some of the hired pilots' employment history showed termination for violating company policies, a suspension of a pilot's license, an FAA notice of

---

[10] Doc. No. 67-11 (rejection e-mail); *see also* Doc. No. 75-1 at ECF 16, 54, 66, 82 (hire dates March 6, 2013; February 23, 2013; March 15, 2013; and February 19, 2013 respectively).

[11] Simon Decl. (Doc. No. 80-1) ¶ 7.

[12] Doc. No. 75-1 at ECF 6, 16, 54, 66, 73, 80.

disapproval, and failed checkrides.[13]

Simon testified that Coto was rejected because he was not "the right fit."[14]  What that means is subject to a variety of interpretations, among which is that Coto was not hired for a discriminatory reason.  Coto contends that the "currency requirement" is an excuse Seaborne fabricated after he brought this action.

Seaborne counters that Coto was less qualified than the hired pilots because all six had flown more than Coto flew in the year before they were hired.  One of the pilots, Dennis Fehrenbach, who already trained with Seaborne in a different class, had flown only twenty hours in the previous six months and one hundred hours in the previous twelve months before he was hired as a Twin Otter pilot.[15]  Seaborne explained he was more qualified than Coto because he had 1,010 hours of experience flying Twin Otter planes.  But, Seaborne admits that Fehrenbach only had Twin Otter experience in land-based takeoffs and landings, not sea landings.[16]  Thus, a jury may infer that Seaborne's reliance on Fehrenbach's Twin Otter experience is pretext and that Fehrenbach was not necessarily more qualified than Coto was.

## Conclusion

In sum, there are numerous disputed material facts surrounding Seaborne's reasons not to hire Coto.  If a jury believes that Coto was qualified for the position and does not believe Seaborne's reasons for not hiring him, a jury may conclude the decision was the result of discrimination.  Given the disputed issues of fact and the

---

[13] *Id.* at ECF 39, 69, 74.

[14] Simon Dep. at 65:9–18.

[15] Simon Decl. ¶ 7.

[16] Seaborne V.I. Inc.'s Reply in Further Supp. of Its Mot. for Summ. J. (Doc. No. 80) at ECF 2 n.1.

9

credibility determinations to be made, Seaborne is not entitled to summary judgment.